UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CAYENNE W.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 2:23-cv-1282

Bowman, M.J.

**MEMORANDUM OPINION AND ORDER**[2]

Plaintiff Cayenne W. filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents a single claim of error for this Court's review. As explained below, the ALJ's non-disability decision is supported by substantial evidence in the record as a whole and therefore is AFFIRMED.

**I. Summary of Administrative Record**

On September 25, 2020, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability three weeks earlier, beginning on September 5, 2020, based on a combination of rheumatoid arthritis and depression. (Tr. 488). After her application was denied initially and on reconsideration, Plaintiff requested an evidentiary hearing. On November 30, 2021, Plaintiff appeared telephonically with counsel and testified before Administrative Law Judge ("ALJ") Jeffrey Hartranft; a vocational expert

---

[1] Due to significant privacy concerns in social security cases, this Court refers to claimants only by their first names and last initials. *See* General Order 22-01.
[2] The parties have consented to the jurisdiction of the undersigned magistrate judge. *See* 28 U.S.C. §636(c).

also testified. (Tr. 452-486). On May 18, 2022, the ALJ issued an adverse written decision. (Tr. 34-49).

Plaintiff was 30 years old on her alleged disability onset date, and remained in the same "younger individual" age category on the date of the ALJ's decision. She lives in an apartment with her wife, her 10-year-old stepdaughter, and their dog. She testified that she worked for the past ten years as a registered nurse, and as a licensed practical nurse prior to that. (Tr. 464). However, she has not worked since her alleged onset date of September 5, 2020. (Tr. 38, 459)

In his decision, the ALJ determined that Plaintiff has the following severe impairments: "degenerative disc disease of the lumbar spine; rheumatoid arthritis; degenerative joint disease of the right knee; degenerative joint disease of the bilateral hips; degenerative joint disease of the right elbow; asthma; left Achilles tendon tear and obesity." (Tr. 38). The ALJ acknowledged that the record includes multiple allegations of additional complaints and conditions, including hypertension, sleep apnea, hepatic steatosis and major depressive disorder with anxious distress, but determined that none of those impairments were "severe." (*Id*.; *see also* Tr. 39, specifically finding Plaintiff's mental impairment to be nonsevere). Considering both severe and nonsevere impairments, the ALJ further found that none - either alone or in combination - met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that she would be entitled to a presumption of disability. (Tr. 40).

The ALJ next determined that Plaintiff retains the residual functional capacity ("RFC") to perform sedentary work, subject to the following non-exertional limitations:

> [S]he could occasionally climb ramps and stairs but could not climb ladders, ropes, or scaffolds; she could frequently reach with the right arm; she would be capable of frequent handling and fingering; she could occasionally stoop,

2

>kneel, crouch, and crawl; and she would need to avoid workplace hazards such as unprotected heights and machinery.

(Tr. 41).

Based on Plaintiff's age, education, and RFC, as well as testimony from the vocational expert, the ALJ determined that Plaintiff could still perform jobs that exist in significant numbers in the national economy, including the representative positions of printed circuit board touchup screener, table worker, and document specialist. (Tr. 48). Therefore, the ALJ determined that Plaintiff was not under a disability through the date of his decision. (Tr. 49). The Appeals Council denied Plaintiff's request for further review, leaving the ALJ's decision as the final decision of the Commissioner.

In her appeal to this Court, Plaintiff does not dispute which impairments were severe, including that her mental impairments were not severe. Plaintiff also does not dispute the finding that none of her impairments, alone or in combination, were of "listing level" severity. Instead, Plaintiff disputes only the ALJ's physical RFC determination that she remains capable of performing a modified range of sedentary work. Specifically, Plaintiff contends that the ALJ erred by failing to consider whether her prescription for a walker further reduced her physical capacity to perform sedentary work.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

3

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity ("SGA"); at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that

4

claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520(g), 404.1560(c), 416.920(g) and 416.960(c).

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. §§ 404.1512(a); 416.912(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. *See* 42 U.S.C. § 423(d)(1)(A).

**B.   Plaintiff's Claim of Error**

In the case presented, the ALJ found that Plaintiff retains the RFC to perform a limited range of sedentary work. But Plaintiff argues that when assessing her physical RFC, the ALJ failed to adequately consider whether or not Plaintiff requires a walker. To provide context, the undersigned begins with a review the relevant evidence of record.

**1.   Evidence Relating to Use of Walker**

**a.   Medical Records**

There appear to be only two dates in the medical records on which a medical provider referenced the use of a walker. The first was when Plaintiff's primary care provider prescribed a walker at a December 2, 2020 wellness visit, approximately three months after Plaintiff's alleged onset of disability. On that date, Plaintiff reported to Audrey Baker, APRN CNP, that she was working toward approval for bariatric surgery, and was participating in a calorie restriction diet. (Tr. 932). Ms. Baker also charted Plaintiff's report of two falls at home in the past month, the first while getting out of bed, and a second fall

walking up the stairs. (*Id.*) Ms. Baker noted that Plaintiff stated more generally that she had experienced "frequent falls lately" that had "been going on for about a year" in part due to "numbness down her left thigh and leg" which caused her to place more weight on her painful right knee. (Tr. 933). Based on Plaintiff's self-reported history of falls, she asked Ms. Baker to prescribe a walker. Ms. Baker agreed to Plaintiff's request. (Tr. 956)

Ms. Baker's medical records list the walker under the diagnostic headings of "rheumatoid arthritis, morbid obesity, and frequent falls." (Tr. 935). She prescribed a standard "heavy duty" walker[3] based on Plaintiff's then-current weight exceeding 300 pounds. (Tr. 956). As "medical justification" for the walker, Ms. Baker states that the heavy duty walker is required

> due to a mobility limitation that significantly impairs ability to participate in one or more [Mobility-Related ADLs] in the home. The mobility limitation prevents the accomplishment of MRADLs, increases the risk of morbidity or mortality secondary to the attempts to perform MRADLs, and prevents completion of MRADLs in a reasonable time frame.

(*Id.*)

A "medical justification" statement is typically required for insurance coverage. For example, the Centers for Medicare & Medicaid Services ("CMS") sets forth conditions necessary for coverage of mobility assistive equipment that closely tracks Ms. Baker's medical justification statement. Thus, CMS guidance authorizes coverage of a walker if the individual has "a personal mobility deficit sufficient to impair their participation in mobility-related activities of daily living (MRADLs) such as toileting, feeding, dressing, grooming, and bathing in customary locations within the home." *See*

---

[3] A heavy duty walker typically is required for adults who weigh more than 300 pounds. A standard walker typically has four legs, and does not include a seat or wheels.

https://www.cms.gov/medicare-coverage-database/view/ncd.aspx?NCDId=219.[4] Apart from her "medical justification" statement, Ms. Baker does not identify which activities in Plaintiff's home require use of a walker, whether the walker is to be used indefinitely or only until Plaintiff undergoes bariatric surgery, or whether the walker ever would be required outside of the home (and if so, under what circumstances).

Other than on December 2, 2020, Ms. Baker's records are wholly silent about the walker. On April 7, 2021, Ms. Baker provided a narrative medical opinion letter that reflects Plaintiff's ongoing treatment for morbid obesity and rheumatoid arthritis, opining that "[i]t is difficult for her to work and do physical labor like standing, walking, lifting or carrying items," and that her "rheumatoid arthritis exacerbations which cause joint swelling and pain… [interfere] with her work." (Tr. 977). While vaguely opining that various activities are "difficult," Ms. Baker's statement lists no specific limitations or restrictions and does not reference instability or any need for a walker. The ALJ found Ms. Baker's narrative statement "inherently unpersuasive" because it "did not contain any formal medical opinion noting how the claimant would be limited or restricted as a result of her diagnosed conditions or associated symptoms." (Tr. 47).

In addition to the absence of reference to the walker in Ms. Baker's records other than the date she prescribed it, references to a walker or to any gait issues are strikingly absent throughout the rest of Plaintiff's extensive medical records. Those records include

---

[4] The same CMS statement explains that beneficiaries "may require mobility assistance for a variety of reasons and for varying durations," including temporary conditions. *Id*. Because the authorized use of the approved assistive device is for ADLs within an individual's home, the prescriber should consider "the physical layout, surfaces, and obstacles that exist in the beneficiary's living environment." *Id*.

7

emergency department visits, rheumatology visits,[5] bariatric surgery appointments,[6] podiatry visits, and medication check-ups relating to Plaintiff's mental health.[7] Virtually none of the records refer to a walker, and very few refer to any gait issues. For example, a single emergency department record dated 5/5/21 for headache, dizziness/ syncope and chest pain contains no reference to use of a walker. (Tr. 1199). At the time, examiners noted Plaintiff was in no acute distress, and was negative for weakness and numbness. (Tr. 1201). On exam, she was found to have normal range of motion, with intact motor function, normal muscle tone, intact coordination, and normal gait. (Tr. 1202-1203).

On the same May 5, 2021 date as her ED visit, Plaintiff presented to a podiatrist for left heel Achilles pain. (Tr. 1424). Again, there is no reference to use of any ambulatory aid or instability, but the podiatrist noted a "heel-to-toe propulsive gait with antalgia due to pain in the left Achilles tendon area." (*Id*.). He recommends that Plaintiff begin wearing a "CAM [controlled ankle movement] walker" (a/k/a CAM boot) to help protect the tendon from rupture, and refers her to physical therapy. (Tr. 1425). By July 21, 2021, a follow-up podiatry note reflects she had completed PT, was doing well, and should start weaning off the CAM walker/boot – again with no reference to a standard walker. (Tr. 1432).

Physical therapy notes similarly contain no reference that would suggest regular use of or need for an ambulatory device. The therapist notes routinely observe that

---

[5]The ALJ cited to rheumatology records that reflect intact and normal gait, a normal range of motion, intact coordination and rapid alternating movements, and normal bilateral deep tendon reflexes. (Tr. 44, citing Ex. 16F/71-74). (*See also*, *e.g.*, rheumatology records at Tr. 1125, 1127, notes dated 7/7/21 reflecting observation of left medical boot with no signs of rheumatoid arthritis in joints of foot or ankle from 5/5/21 XR, and only mild bilateral hip degenerative joint disease based on 3/8/21 XR).

[6](*See*, *e.g.*, bariatric surgery pre-operative records reflecting ADLs limited by pain without reference to a walker (Tr. 1269) and post-operative records stating patient was "feeling well overall," and walking 5 minutes outside without reference to a walker. (Tr. 1228)).

[7](*See*, *e.g.*, Tr. 1057, noting Plaintiff was "wearing a boot on her left foot" based on her podiatrist's recommendation, Tr. 1064 (back from recent family vacation and zoo visit, still wearing her boot)).

Plaintiff would remove her CAM boot at the beginning of therapy and put it back on at the end of the therapy visit, with no record of the use of a walker. Only one PT record from Plaintiff's initial visit, dated May 18, 2021, contains a fleeting reference to a walker. At that initial visit, Plaintiff complained that using the prescribed CAM boot was irritating her right knee, so she had been wearing a knee brace. She further reported that she experienced increased hand pain bilaterally "**if** using a walker." (Tr. 1379, emphasis added). The physical therapist's note adds that "Plaintiff is dramatic when detailing her medi[c]al issues." (*Id*.) Subsequent PT records reflect good progress,[8] with minor set-backs when Plaintiff went fishing. (*See* Tr. 1391, Tr. 1393).

As stated, Ms. Baker briefly referenced Plaintiff's rheumatoid arthritis, obesity, and self-reported falls when she prescribed the heavy duty walker on December 2, 2020. With respect to obesity, Plaintiff was approved for and underwent bariatric surgery on July 26, 2021. By the time of the hearing before the ALJ, Plaintiff had lost more than 100 pounds, weighing in at 252 pounds, with a corresponding reduction in her BMI.[9] (Tr. 1383). Shortly after surgery, her standing tolerance was 15 minutes – with no mention of a walker. (Tr. 1414).

With respect to Plaintiff's rheumatoid arthritis, her rheumatologist opined that she was limited to lifting 20 pounds, with no other limitations. The ALJ found his opinion to be consistent with the RFC as determined. (Tr. 47). In addition to the lack of reference to a walker by the rheumatologist or Ms. Baker in her narrative statement, two agency

---

[8]On June 2, 2021, the PT advised her to continue her home exercise program and to wear her walking boot as instructed while on vacation. (Tr. 1394). Plaintiff was discharged to a home exercise program after attaining her PT goals.

[9]The ALJ's opinion contains two factual errors relating to Plaintiff's obesity. First, he refers to the year of her surgery as 2016 rather than 2021. (Tr. 42). Second, he incorrectly refers to her height as 5' 6" instead of 5' 10", which in turn caused him to incorrectly calculate her BMI at the time of the hearing as 40.7 rather than as 36.2. The latter error impacts the classification of Plaintiff's level of post-surgery obesity.

9

physicians offered opinions on November 13, 2020 and on February 3, 2021 that also contain no reference to a walker or other handheld assistive device. Both opined that Plaintiff could engage in work at the light exertional level, which requires standing and/or walking for a total of about 6 hours per workday. In lieu of fully endorsing their opinions, the ALJ limited Plaintiff to the sedentary exertional level based in part on additional medical evidence submitted after the consultants' review. The ALJ also gave partial weight to Plaintiff's testimony about her ongoing tenderness, loss of sensation in her left lower leg, weakness and pain, and degenerative joint disease of the right knee. (Tr. 46).

### b. Hearing Testimony

Despite the lack of medical records or opinions concerning her use of a walker, Plaintiff testified at the hearing that she frequently uses both a walker and a wheelchair. The ALJ specifically asked Plaintiff why she believed she required a walker, and accurately summarized her response:[10]

> [Plaintiff] claimed she could not walk for very long without pain or falling. She further testified that she had some limited feeling in her left leg tripped on her left foot and/or tended to fall if she did not use a walker when walking more than ten minutes. She also brought a wheelchair if she was going somewhere where she knew there was going to be a lot of walking.

(Tr. 42, citing Tr. 466-467). The ALJ also acknowledged Plaintiff's report that despite her ongoing post-surgical weight loss of more than 100 pounds at the time of the hearing, she continues to "struggle[] to walk, get dressed and do simple things." (Tr. 42, citing Tr. 469). However, the ALJ discounted Plaintiff's subjective reports as "not entirely consistent with the medical evidence and other evidence in the record," (Tr. 42), concluding that her "testimony regarding the extent of [her] symptoms and limitations is not fully supported."

---

[10] Plaintiff makes no claim that the wheelchair was prescribed.

10

(Tr. 47). The ALJ found some musculoskeletal impairments that could reasonably cause some symptoms, but explained that "careful review of the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitations the claimant has alleged." (Tr. 43; *see also* Tr. 44-45, discussing multiple records that do not support Plaintiff's allegations, including records reflecting normal gait, normal motor function, normal range of motion and normal strength, with limited exceptions). Plaintiff does not challenge the ALJ's adverse analysis of her subjective complaints.

### 2. Whether a Failure to Discuss Medical Necessity Constitutes Error

Plaintiff's sole assertion of error rests on the failure of the ALJ to discuss the walker beyond his brief reference to it having been prescribed in December 2020 by Ms. Baker, and his summary of Plaintiff's related testimony regarding her use of a walker or wheelchair. (Tr. 42-43). Specifically, Plaintiff argues that remand is required based on the ALJ's failure to make an explicit finding on whether the walker was "medically necessary."

Social Security Regulation ("SSR") 96-9p provides guidance for the evaluation of the use of any hand-held device and the impact of that use upon sedentary work. In relevant part, SSR 96-9p states:

> [T]here must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, *and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)*. The adjudicator must always consider the particular facts of a case. For example, *if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded*.
>
> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required

11

> hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand. For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.

SSR 96-9p, 1996 WL 374185, at *7 (emphasis added). Consistent with SSR 96-9p, the VE testified in this case that if a hypothetical individual with Plaintiff's limitations required a cane but could still use her other hand, then that individual would still be able to perform the sedentary jobs as described. By contrast, the VE testified that if the individual required the use of a walker at all times, then the individual would be unable to sustain competitive employment. (Tr. 481).

Plaintiff argues that because she presented evidence that the walker was prescribed, the ALJ had a duty to articulate whether the walker was medically necessary, and either include the walker in her RFC or explain why it was being excluded. Plaintiff maintains that the lack of such explicit analysis prevents this Court from conducting a meaningful review of the Commissioner's decision. (Doc. 10 at 9, PageID 1483; *see also* Doc. 14 at 4, PageID 1502, "There is no way of knowing why [the walker] was omitted or whether the ALJ even meant to omit the need from the [RFC].").

The Court disagrees, finding either that no error existed based on Plaintiff's failure to satisfy her initial burden to show medical necessity, or alternatively, because any error was clearly harmless on the record presented. Regulations that apply to *every case* make clear that it is a plaintiff's burden to prove her limitations, including her alleged need for a

walker. *See* 20 C.F.R. § 416.912(a)(2) ("The evidence in your case record must be complete and detailed enough to allow us to make a determination…about whether you are disabled," including the "nature and severity of your impairment(s) for any period in question."). Here, Plaintiff's one-time prescription for a walker does not provide sufficient detail to show that the walker was a "medical necessity" for at least a 12-month period either at that time, or at any other time.

In *Carreon v. Massanari*, 51 Fed. Appx. 571, 575, 2002 WL 31654581, at *2 (6th Cir. 2002), the Sixth Circuit explained that evidence of a prescription for an assistive device is rarely (if ever) enough to satisfy a plaintiff's burden to show medical necessity. Consistent with *Carreon*, multiple courts have found that a mere prescription for an assistive device is not sufficient to demonstrate medical necessity under SSR 96-9p.

> Faced with similar circumstances, courts have upheld ALJ decisions that did not include the need for a cane in a claimant's RFC. *See e.g., Golden v. Berryhill*, 2018 WL 7079506 at * 19 (N.D. Ohio Dec. 12, 2018) ("Moreover, as Dr. Balaji's confirmation of a cane prescription does not indicate 'the circumstances for which [the cane] is needed,' it does not fulfil the requirements under SSR 96-9p."); *Krieger v. Comm'r of Soc. Sec.*, 2019 WL 1146356 at * 6 (S.D. Ohio March 13, 2019) (finding ALJ did not err in not including a limitation for a cane where physician indicated claimant would need a cane but did not describe the specific circumstances for which a cane is needed as required by SSR 96-9p); *Salem v. Colvin*, 2015 WL 12732456 *4 (E.D. Mich. Aug. 3, 2015) (finding the ALJ did not err in not including a limitation for a cane, when it had been prescribed, but the prescription did not "indicate the circumstances in which [the claimant] might require the use of a cane."); *Marko v. Comm'r of Soc. Sec.*, 2017 WL 3116246 at *5 (E.D. Mich. July 21, 2017) (rejecting claimant's assertion that the ALJ failed to account for her use of a cane, stating that nothing in the physician's "mere prescription for a cane provides evidence to indicate the frequency with which the cane should be used, its purpose, or its limit upon Plaintiff's ability to perform light work" (citations omitted)).

*Wright v. Saul*, No. 1:18-cv-1724-PAB-DAR, 2019 WL 3729264, at *4 (N.D. Ohio, Aug. 8, 2019).

13

Plaintiff's argument *might* hold more sway if this were a case in which the medical records were replete with references to her need for and use of the walker under a variety of circumstances. *But see Tommy I. W. v. Comm'r of Soc. Sec.*, No. 3:20-cv-521-PBS, 2022 WL 1951561, at *3-4 (S.D. Ohio, June 6, 2022) (holding that plaintiff's evidence was still insufficient under SSR 96-9p, despite undisputed impairment impeding ability to stand and walk and ample evidence showing routine use of a cane). But here, the walker is barely mentioned at all in the medical records; the primary evidence of its use came from Plaintiff's testimony. Leaving aside the ALJ's adverse consistency/credibility determination concerning that testimony, a claimant's statements about the use of an assistive device are insufficient to satisfy the strict documentation requirements of SSR 96-9p. *Barnes v. Comm'r of Soc. Sec.*, No. 5:21-cv-1688-JDA, 2023 WL 2988346, at *8 (N.D. Ohio March 22, 2023) (collecting cases, holding that a claimant's testimony does not qualify as medical documentation establishing the need for an assistive device); *see also Drew v. Kijakazi*, No. 1:20-cv-1397, 2021 WL 4425783, at *9-10 (N.D. Ohio Sept. 27, 2021) (neither references in medical records to use of a walker nor hearing testimony qualified as medical documentation required under SSR 96-9p to describe circumstances for which a walker is needed or expected duration of medical necessity).

Plaintiff speculates that a variety of her diagnoses, including her "lumbar spine disorder, a knee disorder, bilateral hip disorder, asthma, and morbid obesity" *could* – or as Plaintiff posits - "*would* negatively affect [her] ability to ambulate." (Doc. 10 at 9, PageID 1483, emphasis added). But a diagnosis does not automatically translate into limitations. In order to prove the medical necessity of an assistive device, a claimant must satisfy the criteria of SSR 96-9p. "[T]he burden to present such medical documentation rests with the plaintiff." *Coleman v. Comm'r of Soc. Sec.*, No. 3:20-cv-155-TMR-PBS, 2021 WL

14

3184948, at *3 (S.D. Ohio, July 28, 2021).[11] Plaintiff here points to <u>no medical record</u> by Ms. Baker or other provider that dictates the *specific circumstances* under which a walker must be utilized. S*ee generally, Thacker v. Comm'r of Soc. Sec.*, No. 3:21-cv-1617, 2022 WL 3369533, at *2 (N.D. Ohio Aug. 16, 2022) (holding that the same medical provider who prescribes the device is the provider who should determine and provide a specific description of when the assistive device is necessary).

Here again, Ms. Baker's records reflect that she prescribed the walker based on Plaintiff's self-reported history of falling, with the only medical justification identified as for "one or more" (unspecified) mobility-related activities of daily living inside the confines of Plaintiff's home. In so doing, Ms. Baker made no reference to her own clinical observations of abnormalities in ambulation or gait.[12] Ms. Baker's reference to general issues with mobility is not enough. "SSR 96-9p requires that medical documentation provide further information about the extent and nature of a claimant's need for a cane, such as how often the prescribing physician feels a claimant needs to use it and/or under what particular circumstances it is required." *Wright v. Saul*, 2019 WL 3729264, at *3 (holding treatment note insufficient to satisfy requirement); *see also Tripp v. Astrue*, 489 Fed. Appx. 951, 955 (7th Cir. 2012) (agreeing with Third and Tenth Circuits and requiring "an unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary"). Even if this Court were to consider Ms. Baker's "justification" as specifying that the walker was to be used by Plaintiff to assist her in

---

[11] In *Coleman* and in at one other case presented to this Court, Plaintiff's counsel has unsuccessfully argued the same issue. *See also Ethel R. v. Comm'r of Soc. Sec.*, 1:20-cv-69-DRC-KLL, 2022 WL 190043, at *3-4 (S.D. Ohio, Jan. 21, 2022), adopted at 2022 WL 190043 (S.D. Ohio Jan. 21, 2022).

[12] Plaintiff's report referenced two falls: when she got out of bed and when she was walking up a flight of stairs in her home. While one can envision positioning a walker next to a bed to assist in arising, it is not clear how a walker could be useful on stairs.

15

completing (unspecified) mobility-related ADLs, the prescription suggests (at most) only intermittent use inside Plaintiff's home. There is nothing in Ms. Baker's records to indicate that the walker would be medically required at all outside the home for more than a 12-month period, much less for standing/walking at all times on all terrain. And there is ample evidence (the absence of reference in virtually all medical records) that Plaintiff did not routinely use the walker.

In addition, courts have held that a prescription based on a plaintiff's self-reported difficulties "falls short of the 'medical documentation establishing the need for a hand-held assistive device' required by SSR 96-9p." *Clevenger v. Comm'r of Soc. Sec.*, 2:19-cv-4512-CMV, 2020 WL 2092387, at *9 (S.D. Ohio, May 1, 2020); *Elliott v. Comm'r of Soc. Sec.*, No. 2:19-CV-3445-EAS-CMV, 2020 WL 746597, at *9 (S. D. Ohio Feb. 14, 2020), *report and recommendation adopted*, 2020 WL 5797959 (S.D. Ohio Sept. 29, 2020) (doctor's opinion that the plaintiff occasionally required the use of a cane on uneven surfaces was based on the plaintiff's self-report, which fell short of the medical documentation required). Because no medical source provided a statement that explained the "specific circumstances" for which the walker was allegedly needed, including "whether all the time, periodically, or only in certain situations; distance and terrain," Plaintiff failed to carry her initial burden to show medical necessity. Therefore, the ALJ did not err by failing to explicitly discuss 96-9p or medical necessity. Alternatively, any error in the brevity of the ALJ's analysis was harmless. Even if the ALJ had expanded his discussion of the issue, he could have reached but one conclusion – that evidence of the walker in this case does not satisfy SSR 96-9p.

Multiple courts have reached the same conclusion. In *Cunningham v. Comm'r of Soc. Sec.*, No. 1:19-cv-2227, 2020 WL 5231985, at *10 (N.D. Ohio Sept. 2, 2020), the

court affirmed despite the fact that a cane had been prescribed, based on the plaintiff's failure to present the critical documentation of medical necessity that is required under SSR 96-9p.

> Although the Sixth Circuit has not directly ruled on this issue, other circuit courts have noted the key finding in cases involving assistive devices is documentation "describing the circumstances for which [the assistive device] is needed", *id*. *See Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012) (noting that a finding of medical necessity of an assistive device requires a statement of the circumstances in which it is needed and that other circuits "have required an unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary"); *Spaulding v. Astrue*, 379 F. App'x 776, 780 (10th Cir. 2010) (prescription for a cane from the Veteran's Administration insufficient to show medical necessity); *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002) (prescription and references that claimant used a cane insufficient to show medical necessity).
>
> District courts within the Sixth Circuit have found that lacking such a statement, an ALJ is not required to incorporate the use of an assistive device in the RFC. *See Krieger v. Comm'r of Soc. Sec.*, 2019 WL 1146356, at *6 (S.D. Ohio) (finding ALJ did not err in not including a limitation for a cane where physician indicated claimant would need a cane but did not describe the specific circumstances for which a cane is needed as required by SSR 96-9p), *report and recommendation adopted*, 2019 WL 3955407; *Golden*, 2018 WL 7079506, at *19 ("Moreover, as [the doctor's] confirmation of a cane prescription does not indicate 'the circumstances for which [the cane] is needed,' it does not fulfil the requirements under SSR 96-9p."); *Salem v. Colvin*, 2015 WL 12732456, at *4 (E.D. Mich.) (finding the ALJ did not err in not including a limitation for a cane, when it had been prescribed, but the prescription did not "indicate the circumstances in which [the claimant] might require the use of a cane"); *Halama v. Comm'r of Soc. Sec.*, 2013 WL 4784966, at *8 (N.D. Ohio) ("[E]ven Halama does not contend that the record contains the unambiguous statement of a physician containing the circumstances under which it would be medically necessary for him to use a cane. Inasmuch as there is no such statement in the record, I find that the decision of the ALJ in this case not to incorporate the use of a cane into the RFC is supported by substantial evidence.") (internal quotation omitted).

*Id.* at 10.

Plaintiff cites to another case from the Northern District of Ohio, *Ortega v. Comm'r of Soc. Sec.*, No. 1:20-cv-1461, 2021 WL 2942240, at *8 (N.D. Ohio, June 21, 2021), in

17

support of her position that when there is a prescription for an assistive device, an ALJ "generally" must either incorporate it into the RFC or explicitly discuss its omission. But in *Ortega,* the court remanded based on *multiple* errors, without bothering to discuss the specific documentary requirements of SSR 96-9p or the issue of harmless error. In contrast, other courts consistently have held that an ALJ has no duty to discuss the alleged use of an assistive device, or that an ALJ's failure to discuss the issue constitutes harmless error, where a plaintiff fails to point to *any* documentation that explains the specific circumstances for which the assistive device is medically required.  *See e.g., Spies v. Saul*, No. 19-cv-2928, 2020 WL 5044027, at *16-17 (N.D. Ohio Aug. 26, 2020) (ALJ did not err in not discussing cane despite record that reflected multiple falls and prescriptions for assistive devices, where the claimant failed to identify documentation that specified the circumstances where an assistive device was required, citing SSR 96-9p and collecting cases); *McDowell v. Comm'r of Soc. Sec.*, No. 1:20-cv-297-SL, 2021 WL 1911459, at *12 (N.D. Ohio, Apr. 19, 2021) ("Claimant's prescription for the walker is not sufficient to establish its medical necessity," collecting cases); *Strain v. Comm'r of Soc. Sec.*, No. 5:12-cv-1368, 2013 WL 3947160, *3 (N.D. Ohio Aug. 1, 2013) (without medical documentation demonstrating that plaintiff required the use of a cane including a description of the circumstances for which it is needed, remand would be pointless).

      Courts in the Southern District of Ohio overwhelmingly agree, either finding no error or – at most – harmless error - when the plaintiff fails to point to essential documentation that states the specific circumstances for which a cane or walker is medically necessary. *See Tommy I. W. v. Comm'r of Soc. Sec*., No. 3:20-cv-521-PBS, 2022 WL 1951561, at *3-4 (S.D. Ohio June 6, 2022) (records showing routine use of a cane were insufficient to support remand "because Plaintiff has not pointed to medical

18

documentation … demonstrating that his cane was medically required."); *Coleman v. Comm'r of Soc. Sec.*, 2021 WL 3184948, at *3-4 (harmless error where no medical source offered an opinion or otherwise indicated that plaintiff needed to use the cane and the specific circumstances in which the cane was needed); *Ethel R. v. Comm'r of Soc. Sec.*, 2022 WL 190043, at *3-4 (no error in ALJ's failure to either include the use of a cane or explain its omission where plaintiff failed to point "to any medical documentation that either states that Plaintiff needs a cane or explains under what circumstances that need arises"; alternatively holding that any possible error was harmless); *see also Clevenger v. Comm'r of Soc. Sec.*, *supra*; *Elliott v. Comm'r of Soc. Sec.*, *supra*.

Plaintiff does not present any other challenge to her RFC as determined, which the undersigned concludes was well supported by the record. The VE's testimony in response to a hypothetical question that accurately reflected Plaintiff's impairments constitutes substantial evidence in support of the Commissioner's decision. *See Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 562 (6th Cir. 2022).

### III. Conclusion and Order

For the reasons explained herein, **IT IS ORDERED THAT** the Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

                                               *s/Stephanie K. Bowman*
                                               Stephanie K. Bowman
                                               United States Magistrate Judge